E-FILED
Wednesday, 01 September, 2021  09:59:30 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| SPM REAL ESTATE BLUFFTON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-04192-SLD-JEH |
| | ) | |
| CINEMAS INVESTMENT PROPERTIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER</u>

Before the Court is Plaintiff SPM Real Estate Bluffton, LLC's ("SPM") Motion for Entry of Default Judgment, ECF No. 9. For the reasons that follow, the motion is GRANTED.

**BACKGROUND**

SPM is the owner of real property located within the Kiljordan Creek Shopping Center Addition (the "Shopping Center"), which is located in Macomb, Illinois. Compl. ¶ 1, ECF No. 1. Defendant Cinemas Investment Properties, Inc. ("Cinemas") is the owner of property located within the Shopping Center that is adjacent to SPM's property. *Id.* On March 29, 1994, RJC (predecessor-in-interest to Cinemas) and Macomb #2619 Development Co., Inc. (predecessor-in-interest to SPM) entered into an agreement (the "Agreement") relating to these properties. *See* Agreement, Compl. Ex. A., ECF No. 1-1; *see also* Compl. ¶ 8.

The Agreement imposes obligations on Seller (Cinemas as successor-in-interest to RJC) and Buyer (SPM as successor-in-interest to Macomb #2619 Development Co., Inc.). As relevant here, the Agreement requires Seller to maintain and repair certain common areas, including parking lots. *See id.* ¶¶ B, B(4). In the event Seller "is in default" of its obligations, it has "thirty . . . days from the date of written notice of the default in which to correct the default or, if the

1

default cannot be reasonabl[y] cured within said thirty . . . day period," thirty days "to commence to correct the default."  *Id.* ¶ B(8).  If Seller fails to cure its defaults, Buyer may, but has no obligation to, "[c]ure the default in which case all costs, fees (including reasonable attorneys' fees), or expenses incurred by Seller in connection with the cure of the default shall be paid promptly by Seller."  *Id.* ¶ B(8)(a).

SPM alleges that "Cinemas repeatedly refused to maintain, repair, or replace the Shopping Center's common area parking lot."  Compl. ¶ 2.  It alleges that it sent a notice of default to Cinemas on May 8, 2019, *id.* ¶ 13, and that "[b]y June 25, 2020, Cinemas still had refused to repair the parking lot," *id.* ¶ 17.  As a result, "SPM elected to cure Cinemas' breach as permitted by the Agreement and repair the parking lot at its own cost and expense."  *Id.* ¶¶ 2, 19.  It filed suit against Cinemas for breach of contract, *id.* ¶¶ 21–26, seeking to recover "all costs, fees, and expenses incurred in connection with [its] efforts to repair the parking lot, as well as all other damages [it] incurred as a result of Cinemas' default," *id.* ¶ 20.

Cinemas was properly served but failed to file an answer or other responsive pleading by the deadline; as a result, Cinemas' default was entered.  *See* Oct. 29, 2020 Text Order.  On November 10, 2020, SPM filed a motion for default judgment, ECF No. 8, but the Court struck the motion because SPM failed to attach a memorandum of law in support of its request, Dec. 21, 2020 Text Order.  On January 4, 2021, SPM filed a properly supported motion and memorandum of law, *see* Mem. Supp. Mot. Default J., ECF No. 10.  SPM requests entry of default judgment in its favor in the amount of $77,019.81 in damages and $10,259.00 in attorneys' fees and costs. *See* Mot. Default J. 2.

## DISCUSSION

### I.     Legal Standard

A court may enter judgment against a defaulted party under Federal Rule of Civil

Procedure 55(b)(2).  "A default judgment establishes, as a matter of law, that [a] defendant[] [is]

liable to [a] plaintiff on each cause of action alleged in the complaint."  *e360 Insight v. The*

*Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).  After default is entered, "the well-pleaded

allegations of a complaint relating to liability are taken as true."  *Dundee Cement Co. v. Howard*

*Pipe & Concrete Prods., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983).  However, allegations as to

the amount of damages are not.  *Id.*  A court must conduct a hearing on damages unless "the

amount claimed is liquidated or capable of ascertainment from definite figures contained in the

documentary evidence or in detailed affidavits."  *Id.*

### II.    Analysis

#### a.  Liability

The Court finds it appropriate to enter default judgment against Cinemas under Rule

55(b)(2).  Cinemas is found liable as a matter of law for breaching the Agreement by failing to

maintain and repair the parking lot within thirty days of the notice of default.  *See* Compl. ¶ 24.

#### b.  Damages

The Court finds it unnecessary to hold a hearing on damages because SPM has requested

specific amounts and has submitted documentary evidence and affidavits in support of its

requests.  The amounts requested are "capable of ascertainment" from documentary evidence or

affidavits.  *See Dundee Cement*, 722 F.2d at 1323.  Thus, the only task remaining for the Court is

to determine whether the relief requested by SPM is supported by the facts alleged in the

complaint and SPM's documentary evidence and affidavits.  *See e360 Insight*, 500 F.3d at 602.

### 1.  Costs of Repairing Parking Lot

First, SPM requests $77,019.81 in damages, which represents what it paid to a contractor to repair the parking lot after Cinemas' default.  *See* Mem. Supp. Mot. Default J. 1.  It argues that it is entitled "to recover all costs, fees . . . , and expenses relating to its cure of Cinemas' default" under the Agreement.  *See id.*

The Agreement is a legally binding contract.  In Illinois, "the interpretation of a contract presents a question of law that is decided by the court."[1]  *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008).  A court's principal task in interpreting a contract is "to discern the parties' intent from the contract language."  *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 528–29 (Ill. 2008).  Where the words are "clear and unambiguous, they must be given their plain, ordinary and popular meaning."  *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011).  "Although words should be given their ordinary and accepted meaning, they must also be viewed in context, and the contract must be considered as a whole in order to ascertain the parties' intent."  *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (applying Illinois law).  "The terms should be construed so that the contract is 'fair, customary, and such as prudent persons would naturally execute,' and is 'rational and probable.'"  *Id.* (quoting *Foxfield Realty, Inc. v. Kubala*, 678 N.E.2d 1060, 1063 (Ill. App. Ct. 1997)).

The plain language of the Agreement states that if Buyer cures Seller's default, "all costs, fees (including reasonable attorneys' fees), or expenses incurred by *Seller* in connection with the cure of the default shall be paid promptly by Seller."  Agreement ¶ B(8)(a) (emphasis added).  In

---

[1] "[A] federal court sitting in diversity applies the substantive law of the state in which it is sitting," *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 392 (7th Cir. 2011), including the state's choice-of-law rules, *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018).  "Illinois courts usually enforce contractual choice-of-law provisions."  *Id.*  And here, the Agreement provides that it is governed by Illinois law.  *See* Agreement ¶ B(10)(e).  Thus, the Court applies Illinois law.

other words, it provides that Seller must pay the costs and fees incurred by Seller in curing

Seller's default.  The Court pointed out this oddity in its December 21, 2020 Text Order and

directed SPM to provide legal support for the proposition that the Agreement entitles it, as

Buyer, to recover the costs it incurred repairing the parking lot.

SPM makes various arguments in favor of its request, *see* Mem. Supp. Mot. Default J. 5–

8, only some of which are persuasive.[2]  For example, SPM argues that the only rational and

probable reading of the Agreement as a whole is that it is entitled to recover the costs it paid to

cure Cinemas' default.  *Id.* at 5–6.  For slightly different reasons than presented by SPM, the

Court agrees.  The Agreement provides that in the event of Seller's refusal or failure to cure its

default, Buyer may cure the default.  Agreement ¶ B(8)(a).  The language at issue—"in which

case all costs, fees (including reasonable attorneys' fees), or expenses incurred by Seller in

connection with the cure of the default shall be paid promptly by Seller," *id.*—follows that grant

of authority to Buyer.  The Agreement is clearly meant to require Seller to promptly pay the

costs, fees, or expenses incurred by *Buyer* in connection with Buyer's cure of a default.  The

provision only applies if Seller does not cure its own default and instead Buyer cures the default;

Seller incurs no costs, fees, or expenses when Buyer cures its default.[3]

This understanding is bolstered by the rest of the provision, which allows Buyer to "apply

same against any obligations to pay" its pro rata share of common area maintenance to Seller.

*See id.*; *see also id.* ¶ B(5)(a).  "[S]ame" refers to the "costs, fees . . . , or expenses incurred by

Seller in connection with the cure of the default."  *Id.* ¶ B(8)(a).  Because the provision only

---

[2] The Court does not find persuasive, for example, SPM's argument that "incurred by Seller" means "Seller became liable to pay."  *See* Mem. Supp. Mot. Default J. 6–8.

[3] SPM does not argue that the parties merely inserted Seller where they meant Buyer, though this seems to be the simplest argument in favor of SPM's request.  *See Schultz v. Charleston*, 261 Ill. App. 51, 56 (Ill. App. Ct. 1931) ("Inaccuracy of language which results from inserting a word not meant, or using the wrong word, will not be permitted to defeat the intention, when it can be distinctly ascertained." (quotation marks omitted)).

applies if Buyer cures the default, the parties surely meant to allow Buyer to offset its own costs from the amount it otherwise owes Seller.  Allowing Buyer to offset the costs, fees, and expenses Seller incurs, which, again, would be none, would provide Buyer no relief.

Moreover, the Agreement alternatively allows Buyer, in the event of Seller's failure to cure its default, to perform any required maintenance of common areas "if, in [Buyer's] reasonable discretion it determines that such action is necessary for the efficient and/or safe operation of the Shopping Center."  *Id.* ¶ B(8)(b).  If Buyer does so, it may direct the tenants of the Shopping Center who would otherwise pay their pro rata share of common area maintenance to Seller to pay that pro rata share to Buyer to "the extent necessary to reimburse Buyer for the costs, fees and expenses incurred or to be incurred by Buyer in performing" the required maintenance.  *Id.*  That this provision allows Buyer to recover the costs it incurs performing maintenance necessary based on Seller's default suggests the parties also intended Buyer to be able to recover the costs it incurs if it chooses to cure Seller's default.

Therefore, the Court finds that the Agreement supports SPM's request for the costs it incurred repairing the parking lot.  It has provided documentary evidence supporting that it spent $77,019.81 repairing the parking lot.  *See* Leibering Decl. ¶¶ 6–7, ECF No. 10-2 at 1–3; Invoice, Leibering Decl. Ex. 2, ECF No. 10-2 at 12–13; Check & Payment, Leibering Decl. Ex. 3, ECF No. 10-2 at 14–16.  Thus, the Court awards $77,019.81 in damages to SPM.

## 2. Attorneys' Fees and Court Costs

Next, SPM requests attorneys' fees and costs in the amount of $10,259.00.  *See* Mem. Supp. Mot. Default J. 9.  It argues that the Agreement allows recovery of reasonable attorneys' fees "in connection with the cure of the default."  *Id.* at 8–9 (quoting Agreement ¶ B(8)(a)).

In Illinois, a successful litigant may recover attorneys' fees from the opposing party if a statute or contractual provision so provides. *Cf. Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) ("Illinois generally recognizes the American Rule that, absent a statute or contractual provision, a successful litigant must bear the burden of his or her own attorney's fees." (quotation marks omitted)). But while "Illinois law governs whether a court should award attorneys' fees pursuant to an indemnity provision in a contract, the method of determining attorneys' fees is a procedural issue governed by federal law in a diversity suit." *Cap. One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-cv-4731, 2012 WL 3777025, at *4 (N.D. Ill. Aug. 27, 2012) (citing *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004)).

Here, the Agreement provides that in the event of a default, Buyer may cure the default "in which case all costs, fees (*including reasonable attorneys' fees*), or expenses incurred by Seller in connection with the cure of the default shall be paid promptly by Seller." Agreement ¶ B(8)(a) (emphasis added). As the Court has already found that this provision requires Seller to pay the costs, fees, and expenses incurred by Buyer, *see supra* Section II(b)(1), the only questions that remain are whether the attorneys' fees requested were incurred in connection with the cure of the default and whether they are reasonable, *see* Agreement ¶ B(8)(a).

"In connection with" is "very broad" language. *See Petkus v. St. Charles Sav. & Loan Ass'n*, 538 N.E.2d 766, 769 (Ill. App. Ct. 1989). As this lawsuit was filed because SPM elected to cure Cinemas' default and to recover the costs incurred curing the default, the Court finds that the attorneys' fees incurred in this lawsuit were incurred in connection with curing the default.

To determine whether the requested attorneys' fees are reasonable, the Court looks to federal law. *See Cap. One Auto*, 2012 WL 3777025, at *4. In a contractual fee-shifting case, "the nature and scope of a court's determination as to whether attorneys' fees are reasonable is

7

more limited" than in a statutory fee-shifting case. *Id.* "[T]he standard in a contractual fee-shifting case is a commercially reasonable standard." *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 572 (7th Cir. 2011) (quotation marks omitted). In other words, in a contractual fee-shifting case, "reasonableness must be assessed using the market's mechanisms." *Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 200 F.3d 518, 520, 521 (7th Cir. 1999) (indicating that reasonable fees are "fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves"); *see also Balcor Real Est. Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it."). Under this standard, a court should not conduct "a detailed, hour-by-hour review after the fashion of a fee-shifting statute" but should "undertake[] an overview of [the prevailing party's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case and [the losing party's] litigation strategy." *Medcom*, 200 F.3d at 521.

Here, SPM's lawyers, from the firm Neal, Gerber & Eisenberg LLP ("NGE"), incurred $9,684.00 for eighteen hours of work and $575.00 for filing the lawsuit and serving Cinemas. *See* Frye Decl. ¶¶ 6–8, ECF No. 10-3. Invoices from NGE show that Attorney Jason Frye spent 17.1 hours working on this matter at $535.00 an hour. *See generally* Invoices, Frye Decl. Grp. Ex. 1, ECF No. 10-3 at 5–18 (noting he spent 6.4 hours in July 2020, 0.8 hours in August 2020, 0.9 hours in September 2020, 3.0 hours in October 2020, 1.0 hour in November 2020, and 5.0 hours in December 2020 on the matter). Attorney Scott Fisher[4] spent 0.6 hours on the matter at $800.00 an hour. *See id.* at 3, 10, 12 (noting that he spent 0.2 hours in July 2020, 0.2 hours in

---

[4] The invoices show charges for S.J. Fisher. Scott J. Fisher is a partner at NGE. *See Scott J. Fisher*, NGE, https://www.nge.com/Our-Lawyers/Scott-Fisher (last visited Sept. 1, 2021). He has entered his appearance in this case. *See* Not. Appearance, ECF No. 5.

October 2020, and 0.2 hours in November 2020 on the matter).  B. Mrkvicka—SPM does not

explain who this is or what his or her role is—spent 0.3 hours on the matter at $185.00 an hour.

*See id.* at 10.  The invoices also show that NGE paid $575.00 in October 2020 for service and

filing the complaint in the instant lawsuit.  *See id.* at 9.  SPM paid the invoices from July through

November 2020 in full and intended to pay the additional charges for December in the ordinary

course of business.  *See* Leibering Decl. ¶¶ 9–10.  (Carrie Leibering, Deputy General Counsel of

SPM, *id.* ¶ 2, executed her declaration prior to the end of December 2020).

       Attorney Frye declares that the rates charged are NGE's "usual and customary rates" and

are "within the normal standards of the community for the type of legal services performed."

Frye Decl. ¶ 7.  That these are NGE's usual rates suggests SPM's attorneys charged market rate

in this case.  *See 1st Source Bank v. Neto*, Case No. 3:15-CV-261-JD, 2018 WL 8756568, at *3

(N.D. Ind. June 13, 2018) ("The best evidence of an attorney's market rate is his or her actual

billing rate for similar work.  Here, counsel confirms that the rates billed were the attorneys'

standard hourly rates for the services which were provided." (citation omitted)).  That SPM paid

NGE's fees is an indication that the total fees requested are commercially reasonable.  *See*

*Balcor*, 73 F.3d at 153 ("[T]he best guarantee of reasonableness is willingness to pay.");

*Matthews*, 642 F.3d at 572 ("A willingness to pay is an indication of commercial

reasonableness."); *id.* at 572–73 (finding that even though the total amount of attorneys' fees

sought in the case was "unfortunately[] very high," the fees were "commercially reasonable"

because the defendant paid them).  While the attorneys' rates—$535.00/hour and

$800.00/hour—are higher than is customarily awarded in the Central District of Illinois in

statutory fee-shifting cases, *see, e.g.*, *Jackson v. City of Peoria*, Case No. 17-1129, 2019 WL

5103806, at *8 (C.D. Ill. Oct. 11, 2019) (finding that $425/hour was the prevailing market rate in

the Central District of Illinois), NGE is a Chicago-based law firm, *see Our Office*, NGE, https://www.nge.com/Our-Story/Our-Office (last visited Sept. 1, 2021).  Attorney Frye declares that "[t]he fees [they charged] are lower than those charged by other similarly situated Chicago attorneys for similar services."  Frye Decl. ¶ 7.

Moreover, in a contractual attorneys' fees case such as this, the Court's principal task is to consider the "aggregate costs in light of the stakes of the case."  *Matthews*, 642 F.3d at 572.  SPM's representation—attorneys and staff—expended only 18 hours working on this case, which seems reasonable given that Cinemas did not appear in the case and the only motions SPM filed were motions for entry of default and for entry of default judgment.  *See* Mot. Entry Default, ECF No. 7; First Mot. Default J.; Mot. Default J.  And the total amount of attorneys' fees, $9,684.00, is not unreasonably high considering the stakes of the case: SPM recovered over $77,000.00 in damages.  *See Logan Knitting Mills, Inc. v. Matrix Grp. Ltd., Inc.*, No. 04 C 7596, 2007 WL 1594482, at \*1, \*3 (N.D. Ill. June 1, 2007) (finding "that $280,000 [wa]s a reasonable amount to spend [on attorneys' fees] considering that th[e] suit was worth $360,000" despite the prevailing party recovering only $90,000 in damages).  The Court finds the requested fees— $400.00 for filing this suit and $175.00 for serving Cinemas—reasonable and supported by the evidence as well.

Therefore, the Court grants SPM $10,259.00 in attorneys' fees and costs.

## CONCLUSION

Accordingly, Plaintiff SPM Real Estate Bluffton, LLC's Motion for Entry of Default Judgment, ECF No. 9, is GRANTED.  SPM is awarded $77,019.81 in damages and $10,259.00 in attorneys' fees and costs.  The Clerk is directed to enter judgment and close the case.

10

Entered this 1st day of September, 2021.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
